## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CARLTON E. HOOKER, JR.,

      Plaintiff,

v.                               CASE NO. 8:20-cv-1248-T-02CPT

ROBERT WILKIE, Secretary,
Department of Veterans Affairs, and
WILLIAM BARR, Attorney General,
United States Department of Justice,

      Defendants.

_____/

## ORDER

Before the Court is Defendants' Motion to Dismiss Freedom of Information Act Complaint with attachments (Dkt. 8), Plaintiff's response (Dkt. 14), Defendant's Supplemental Exhibit (Dkt. 12), and Plaintiff's response (Dkt. 17). After careful consideration of the allegations of the complaint (Dkt. 1), the submissions of the parties, and the applicable law, the Court grants the motion to dismiss.

## BACKGROUND

This action is one of many brought by Plaintiff, proceeding *pro se*, in the federal district court for the Middle District of Florida.[1] Most of the prior cases

---

[1] *See* cases delineated in *Hooker v. Wilkie*, 8:18-mc-89-T-36JSS at Dkt. 7; *Hooker v. Wilkie*, 8:19-mc-90-T-30CPT at Dkt. 2; *Hooker v. Shinseki*, No. 8:14-cv-333-30AEP at Dkt. 17. All of Plaintiff's cases have been randomly assigned to different judges.

were related to his former employment with the Bay Pines Veterans Affairs Healthcare System ("Bay Pines VA"), which ended in 2010. Others were related to actions taken and decisions made by Bay Pines VA in 2016 and 2017. *See, e.g.*, *Hooker v. Wilkie*, No. 8:18-cv-696-T-33TGW; *Hooker v. Wilkie*, No. 8:18-cv-2000-T-36JSS. The latter cases assist in understanding the allegations in this action.

### *Events and acts leading up to this FOIA lawsuit*

Two major events occurred in 2016 and 2017. First, a ban was imposed by Bay Pines VA against Plaintiff in 2016 (the "lifetime ban").[2] Second, in the spring of 2017, Plaintiff unsuccessfully applied for two police officer positions with Bay Pines VA. Around the time he was applying for the police officer positions, Plaintiff began submitting Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, requests to the VA and other agencies. *See Hooker v. Wilkie*, 8:18-cv-2000-T-36JSS at Dkt. 43. Plaintiff sought documents relating to the VA's authority to hire the positions for which he had applied. *Id*. The subject of this action pertains to only the FOIA requests and the agencies' responses.

In March 2018, Plaintiff was granted leave to file a civil rights lawsuit pertaining to the events of 2016 and 2017.[3] *Hooker v. Hopkins*, 8:15-cv-750-T-

---

[2] The chronology of events precipitating the lifetime ban is set forth in prior cases.

[3] In April 2015, Plaintiff was designated a vexatious litigant and barred from filing any action in any court related to his prior employment at Bay Pines VA. *See Hooker v. Hopkins*, No. 8:15-

30TGW at Dkt. 16 (order granting permission).[4]  In the permitted action, *Hooker v. Wilkie*, No. 8:18-cv-696-T-33TGW ("the Title VII lawsuit"), Plaintiff challenged the lifetime ban.  The Title VII lawsuit was dismissed with prejudice on August 29, 2018.  *Id*. at Dkt. 57.

Meanwhile Plaintiff filed a complaint with the EEOC against the VA concerning his non-selection for the two police officer positions.  *See Hooker v. Wilkie*, No. 8:18-cv-2000-T-36JSS at Dkt. 1-1 (documents evidencing EEOC action).  When the EEOC denied the claim on August 10, 2018, Plaintiff filed *Hooker v. Wilkie*, No. 8:18-cv-2000-T-36JSS ("the Employment Discrimination lawsuit").  The court in the Employment Discrimination lawsuit found 1) Plaintiff impermissibly sought to relitigate the issues determined in the Title VII lawsuit, and 2) Plaintiff was never permitted to file an action challenging the lifetime ban because leave to file was restricted to the two police officer positions for which he

---

cv-750-T-30TGW at Dkt. 4 ("the Injunction Order"); *Hooker v. Wilkie*, No. 8:18-mc-89-36JSS at Dkt. 7 (citing the Injunction Order).  He was permitted to go forward with actions not otherwise related, conditioned upon a determination by the presiding court.  *Id*.  In contravention of the Injunction Order, however, Plaintiff "continued to file duplicative claims and causes of action related to his employment with the [Department of Veterans Affairs] and the alleged lifetime ban."  *Hooker v. Kliner*, 8:18-cv-2163-30AAS at Dkt. 62.  The Injunction Order was eventually discharged due to the passage of time.  *Hooker v. Hopkins*, 8:15-cv-750-T-30TGW at Dkt. 23.

[4] The order granting permission is also docketed in *Hooker v. Wilkie*, 8:18-cv-696-T-33TGW at Dkt. 2.  Two other court orders have been construed to permit Plaintiff to file a claim with the EEOC, as opposed to lawsuits, concerning the ban as a denial of the opportunity to compete for any job offered by Bay Pines VA.  *Hooker v. Dep't of Veterans Affairs*, No. 8:18-cv-2000-T-36JSS at Dkt. 43 (citing *Hooker v. Dep't of Veterans Affairs*, No 8:17-mc-62-T-35AAS at Dkt. 2 and *Hooker v. Dep't of Veterans Affairs*, No. 8:16-mc-155-T-35MAP at Dkt. 2).

applied but was not selected.  *Id*. at Dkt. 43 at 9, 14.  The court dismissed with prejudice the part of the action challenging the lifetime ban but allowed Plaintiff to file an amended complaint with respect to non-selection for the positions.  *Id*. at Dkt. 43 at 9, 14.[5]

The entire Employment Discrimination lawsuit was ultimately dismissed with prejudice in January 2020.  *Id*. at Dkt. 76.  Despite the dismissal, Plaintiff has filed multiple motions to reopen and seek other relief in the closed Employment Discrimination lawsuit.  *Id.* at Dkts. 77, 80, 83, 86, 88, 90, 96, 98.  Before the instant FOIA action was opened, Plaintiff filed a copy of the FOIA complaint here in that lawsuit.  *Id*. at Dkt. 91-3.

### ***This FOIA action***

In May 2020, the instant FOIA action was filed after the conclusion of an appeal of one of Plaintiff's many duplicative FOIA requests.[6]  Plaintiff brings two counts against the VA (Counts I and III) and two against the "AG" (Counts II and IV), which he also refers to as the Executive Office for the United States Attorneys ("EOUSA") and the Department of Justice.

---

[5]  "And Claim A, though brought as a Title VII claim, is clearly an attempt to challenge the ban from Bay Pines, which is outside the leave granted by [the order in 8:16-mc-155-T-35MAP at Dkt. 2]."  *Hooker v. Dep't of Veterans Affairs*, 8:18-cv-2000-T-36JSS at Dkt. 43 at 14.

[6]  Interestingly, the appeal was concluded by OPM, and not the VA.  The numerous FOIA requests made to the VA, OPM, and the Executive Office of the United States Attorneys are nevertheless the same.  The responses include 1) "no records" exist, 2) the documents have been produced (in late 2019), and, most recently, 3) these records have been requested and the response already given.

The FOIA request at issue sought two documents: 1) a copy of the direct-hire authority request made to OPM by the VA for the police officer position "created, opened, and closed" April 3, 2017; and 2) a copy of OPM's approval for that position.  *See* Dkt. 1 at ¶¶ 7, 10, 12, 13, 17, 20, 28.  The VA had initially responded to prior requests for these same documents, dating as far back as 2017, by stating no records existed.  *See* Dkt. 1 at ¶¶ 8–10; Dkt. 8-1 (VA "no records" response to his 2017 request); Dkt. 8-2 (VA "no records" response dated 11/8/2019, which directed the Office of Chief Human Capital Officer of the VA to conduct further search).  In November 2019, and for the very first time, the Office of the Chief Human Capital Officer of the VA produced two documents: 1) a four-page document from the VA to OPM seeking direct-hire authorization for positions including police officers; and 2) a two-page letter from OPM approving the positions.  Dkt. 1 at ¶¶ 8, 9; Dkt. 8-3.  The four-page VA direct hire authorization request was received by OPM eight months after April 2017, and the two-page approval was dated January 18, 2018.  Dkt. 1 at 20.

Counts I and II are premised on Plaintiff's contention the two documents are "fraudulent" and were created by the VA at the behest of an assistant United States attorney ("AUSA").[7]  Count I alleges the VA committed fraud in November 2019

---

[7] Although unclear, Plaintiff claims he was tricked into applying for the "fake" April 3, 2017 position.

by producing the two fake documents.  Count II alleges on April 13, 2020, he discovered the Executive Office of the United States Attorneys ("EOUSA") committed fraud by "covering up evidence" concerning the VA's document production.  Dkt. 1 at ¶¶ 29, 30.

Plaintiff appealed the 2019 record production from the VA to both the VA and OPM.  Count III seeks to compel the VA to rule on the appeal.  Dkt. 1 at ¶ 33. He also appealed the April 2020 decision of the EOUSA to the Department of Justice.  Dkt. 1 at ¶¶ 30, 34.  Count IV seeks to compel the Department of Justice to rule on the appeal.  Dkt. 1 at ¶ 36.

Plaintiff raised these same fraud allegations in the Employment Discrimination Action and now claims that he intends to use the denial of his latest agency appeal in that action.[8]  This lawsuit concerns only whether the agencies followed FOIA.[9]

---

[8] The complaint here alleges Plaintiff can prove his claims in the closed Employment Discrimination lawsuit with the FOIA responses he has received over the past 3 years from the VA and other agencies.  Dkt. 1 at ¶¶ 23, 27, 34; Dkt. 1 at 14.  The court in the Employment Discrimination lawsuit has already ruled with the benefit of all the requests and responses he made and received prior to its dismissal; yet, Plaintiff continues to file agency responses in the closed Employment Discrimination lawsuit.

[9] The task of patching together, in coherent form, the myriad duplicative requests to the VA, OPM, and the DOJ, along with agency responses and appeals of select agency decisions, has been tedious, daunting and time-consuming.  As noted by Defendants, and admitted in the complaint, Plaintiff filed a minimum of three duplicative FOIA requests since mid-February 2020.  Dkts. 8-5, 8-6, 8-7.

## STANDARD OF REVIEW

This Court applies the *Twombly-Iqbal* standard to determine whether the complaint states a plausible claim for relief.[10]  The non-conclusory facts alleged in the complaint are accepted as true, construing them in the light most favorable to the plaintiff.  *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). "A document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (citation omitted).  *Pro se* pleadings, although liberally construed, must not be rewritten by the court to sustain an action.  *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

## ANALYSIS

A person aggrieved by an administrative appeal from a FOIA response may file an action in federal district court.  5 U.S.C. § 552(a)(4)(B).  The district court has jurisdiction to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."[11]  *Id*.  FOIA does not allow for an award of money damages.  *Lewis*

---

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[11] To the extent the complaint can be read to bring a claim against any individual of the agencies, those individuals are dismissed with prejudice.  *See Petrus v. Bowen*, 833 F.2d 581, 582 (5th Cir. 1987) ("Neither [FOIA] nor the Privacy Act creates a cause of action for a suit against an

*v. Dep't of the Army*, No. CV115-133, 2016 WL 5219630, at *2 (S.D. Ga. Sept. 21, 2016) (citing cases); *Cunningham v. U.S. Dep't of Justice*, 961 F. Supp. 2d 226, 236 (D.C. Cir. 2013) (citation omitted).  Plaintiff's request for damages is denied.[12]

In a FOIA action, the plaintiff must show an agency "has (1) improperly (2) withheld (3) agency records."  *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quotation and internal quotation marks omitted).  The complainant must identify the document being withheld.  *Lopez v. United States*, 656 F. App'x 957, 967 (11th Cir. 2016) (remanding to district court because complaint sufficiently alleged inadequate agency response).  Mr. Lopez had described in his complaint a specific memorandum, which was missing from the agency production.  *Id*., 656 F. App'x at 968 ("It did not appear that Lopez received the Warden's memorandum in response to his FOIA request.").  Unlike Mr. Lopez, the Plaintiff here neither seeks nor identifies a document, but rather desires a "no records" response from the VA.  Dkt. 1 at ¶¶ 7–18.

---

individual employee of a federal agency.").  Although the VA is an agency, the remaining Defendant is more properly identified as the Department of Justice, as one of the contested responses issued from the EOUSA.  *See* Dkt. 1-2 at 1–2.  The Attorney General "AG" and any United States Attorney's Office are not agencies under FOIA.  *See Del Rio v. FBI*, No. 08-21103-Civ-M, 2008 WL 11331745, at *1–2 (S.D. Fla. Oct. 21, 2008).

[12] Plaintiff requests the same damages as those he sought in the Employment Discrimination lawsuit, ranging from $300,000 to $900,000.  Dkt. 1 at 14.

## *Count I concerning fraudulent agency action*

The complaint does not disclose that Plaintiff began sending FOIA requests in 2017. The complaint starts with the requests made in October 2019, which resulted in him receiving two documents for the first time. Dkt. 1 at ¶ 7. His October 2, 2019 FOIA request to OPM resulted in a "no records" response on October 11, which Plaintiff did not appeal. Dkt. 1 at ¶ 11. His October 19, 2019 similar request to the VA took a different and circuitous route.

Before discussing the paths of the 2019 FOIA requests, the Court notes Plaintiff's intent is clear. He plans to use the two documents produced by the VA in late November 2019, together with a future, anticipated "no records exist" response, to prove the documents' "fraudulent" nature. He asserts they were fraudulently created by individuals at the VA to cover up the VA's failure to obtain direct hire authorization from the OPM for the police officer positions of April 3, 2017. He baldly accuses the AUSA of instructing the VA "to use the [the VA's 4-page request for direct hire authority received by OPM in December 2017, and the 2-page letter from OPM dated January 24, 2018, approving the direct hire positions] to fraudulently claim that the VA received approval." Dkt. 1 at ¶ 23. According to Plaintiff, the documents on their face prove they were "fraudulently"

9

manufactured after the April 3, 2017 position.[13]  Dkt. 1 at ¶ 15 (document "proves that the VA provided a Fraudulent Response in VA FOIA No. 20-01289-F [the 2019 production]" because it shows the request to OPM was made eight months after the April 3 position was created by the VA.).[14]

The duplicate FOIA request that prompted response No. 20-01289-F was submitted October 31, 2019 to the VA.  Dkt. 1 at ¶ 7.  Adding more confusion to the chain of events, one section of the VA initially made a "no records" response to the October 31 request and, at the same time, referred the October 31 request to the Office of the Chief Human Capital Officer within the VA.  Dkt. 8-2.[15]  The complaint is silent regarding whether he appealed this "no records" response, but the motion indicates Plaintiff did not appeal.  Dkt. 8 at 6.

It was the Office of the Chief Human Capital Officer with the VA that produced the two "fraudulent" documents in late 2019.  On January 16, 2020, Plaintiff appealed the "fraudulent" VA FOIA response No. 20-01289-F.  Dkt. 1 at ¶ 12; Dkt. 1-2 at 2–4; Dkt. 8-4 (emailed notice of appeal).  Although Plaintiff

---

[13] A copy of the letter from OPM regarding FOIA No. 2020-02613 states OPM "received a signed copy of [the VA request for direct hire authority] via email on December 11, 2017.  The VA request was not dated or timestamped by OPM.  Copies of these documents are attached."  Dkt. 11-3, which was also filed in the Employment Discrimination lawsuit at docket 83-3.

[14] As noted earlier, he seeks to use these "fraudulent" documents in the Employment Discrimination lawsuit, which was dismissed, as evidence of discrimination involving his non-selection for the two police officer positions.  Dkt. 1 at ¶¶ 23, 27, 34; Dkt. 1 at 14.

[15] This "no records" response was appealable.  Dkt. 8-3.

appealed the VA's decision to OPM, the VA also accepted the email as an appeal. Dkt. 8-4.

Despite the pendency of the January 16, 2020 VA and OPM appeals regarding the documents, Plaintiff continued, and continues, to make the same FOIA request, which has led to an entangled state of requests, emails, responses, appeals, and final agency decisions, all with various numbers assigned. These actions resulted in a February 13, 2020 production of the same two documents, this time from OPM. Dkt. 1 at ¶ 15. On March 16, 2000, OPM responded to a "second" request by providing the same documents. Dkt. 1 at ¶ 16.[16] On March 24, 2020, OPM responded to a third request with the following:

> Your FOIA request is denied because you have already made this same request in which OPM has already responded. On March 17, 2020, OPM supplied you with the documents which you requested for Vacancy Announcement No. MY-FNC-1944457-BU-NC.

Dkt. 1 at ¶ 18.

That same day, March 24, 2020, Plaintiff appealed the decision from OPM. Dkt. 1 at ¶ 19. He complains OPM's response is "fraudulent" because he "should

---

[16] The March 16 cover letter provides:
> [OPM ] has no way of making a determination when the Direct Hire Authority was used by the VA for the development of advertisements for positions to be filled specifically for Police Officers. OPM received a signed copy of this Direct Hire authority request via email on December 11, 2017. OPM approved the authority effective January 24, 2018. Copies of these documents are attached. You have the right to appeal this determination.

Dkt. 11-3 at 13–14.

have received a '**No Records Response'** just like I did in OPM FOIA No. 2020-00148, which shows that OPM never received a Written Request. . . from the VA to create the Direct Hire Authority Police Officer position on April 3, 2017, and the OPM did not approve the posting of that position." Dkt. 1 at ¶¶. 17, 19 (emphasis in original).  The March 24, 2020 OPM appeal was denied on May 11, 2020, and this lawsuit ensued.  Dkt. 1 at ¶ 20.[17]

Having synthesized the posture of each appeal, the Court determines the proper party Defendant in Count I is OPM because the March OPM appeal, not the January VA appeal, was final when this FOIA action was filed on June 1, 2020. The January 16, 2020 appeal to the VA was not decided until after this action was filed.  *See* Dkt. 1, Count III; Dkt. 14.  Plaintiff, therefore, did not exhaust his administrative remedies relative to the VA appeal.

In the event this order's summation and recitation of relevant dates and actions may be questioned or flawed, the Court determines the complaint fails to

---

[17] Attached to one of Plaintiff's filings is the May 11 written denial:

> In its initial response, OPM sent you signed copies of a Direct Hire request it received from the VA on December 11, 2017, and a copy of OPM's approval, effective January 24, 2018.  You have appealed this initial response . . . As I understand it, you are seeking a copy of any OPM DHA approval to the VA that may have been in effect on April 3, 2017.  You have appealed the initial response because the copy of the DHA approval you were sent had a date of January 2018, and therefore would not have applied to a hiring in April of 2017.  In considering your appeal, a member of my staff contacted OPM Employment Services staff to ask them to re-check their file for responsive records.  OPM officials confirmed that there are no records responsive to your request.

Dkt. 11-4.

state a claim for relief under FOIA against either OPM or the VA.  Plaintiff has not

identified even one record that has not been produced.  He has filed appeals from

only those agency actions which produced the two post-April 2017 "fake" records

at issue.  He has not expressed, and does not express, a desire to appeal from the

"no records" responses.  Indeed, he keeps sending more FOIA requests expecting,

if not seeking, more "no records" responses, and he appeals when he does not

receive same.  Any other response he characterizes as fraudulent.  A FOIA action

cannot be used, or perhaps misused as the case here, as a discovery tool to gather

evidence to be used in other lawsuits.  *See N.L.R.B. v. Robbins Tire & Rubber Co.,*

437 U.S. 214, 242 (1978).  This Court simply cannot order an agency under these

circumstances to provide the specific response the requester wishes.

For example, according to Plaintiff, he has now received a July 10, 2020 "no

records" response from the VA regarding a July 5, 2020 FOIA request, which

request is the same as all prior requests.  Dkt. 14 at 12–14.  The "no records"

response is appealable, if Plaintiff so desires, through administrative procedures.

*Id.*  By his own allegations, however, Plaintiff obtained the precise response he

wanted.  Not only does the complaint fail to identify records not already produced,

but Count I is moot as it no longer presents a case or controversy under FOIA.

## *Count II pertaining to Department of Justice*

Count II against the Department of Justice also fails to state a claim under FOIA. The complaint alleges Plaintiff sought to obtain the very same documents he received from the VA, but this time from the DOJ.

FOIA obligations require agency records either belong to the agency, by creating or obtaining them, or be within its control. *See Wolfe v. Dep't of Health & Human Servs.*, 711 F.2d 1077, 1079 (D.C. Cir. 1983) (defining agency record as either created or obtained by agency) (citation omitted); *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.D.C. 1996) (citing four factors to determine agency control). Plaintiff's own allegations establish he is the one who initially copied an AUSA with the documents produced by the VA and OPM. Dkt. 1 at ¶¶ 21–25. He alleges nothing attributing those records to the Department of Justice. Plaintiff may not use this FOIA action to prove the DOJ's complicity an alleged fraud by "concealing" the records already produced by the VA. *See* Dkt. 1 at ¶ 34 (AUSA concealed fraudulent VA records "which should justify the reopening of the 2nd Amended Complaint under [No. 8:18-cv-2000-T-36JSS]." Count II does not stand.

## *Counts III and IV seeking to compel agency action*

Exhaustion of administrative remedies is a prerequisite to filing a FOIA action in the district court. *See* 5 U.S.C. § 552(a)(4)(B). Exhaustion under FOIA

may occur in one of two ways: actual or constructive.  *Taylor v. Appleton*, 20 F.3d 1365, 1338 (11th Cir. 1994).  "Actual exhaustion requires a party to appeal any adverse agency determination before filing suit."  *Lopez v. United States*, No. 5:18-cv-263-Oc-34PRL, 2020 WL 1492804, at *9 (M.D. Fla. Mar. 27, 2020), *appeal docketed*, No. 20-12738 (11th Cir. July 22, 2020) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 64-65 (D.C. Cir. 1990)).  Constructive exhaustion occurs when an agency has not responded to a FOIA request or has not decided an appeal within the statutory time constraints.  5 U.S.C. § 552(a)(6)(C); *Lopez*, 2020 WL 1492894, at *9.  The various time limits for an agency to act are set forth in 5 U.S.C. § 552(a)(6).  FOIA permits a lawsuit in the district court to compel an agency response in the case of constructive exhaustion.  *Taylor*, 30 F.3d at 1368.

Count III concerns the January 16, 2020 appeal to the VA of the November 21, 2019 decision by the Office of the Chief Human Capitol Officer with the VA.  Dkt. 1 at ¶ 31; Dkt. 1-2 at 2–4.  Plaintiff alleges that as of May 18, 2020, he had not received a decision on the appeal and the statutory time limit for doing so had passed.  Dkt. 1 at ¶ 33.  Plaintiff's response discloses, however, that on July 10, 2020, the VA timely responded to another, duplicate FOIA request made July 5, 2020. Dkt. 14 at 12–14 (VA letter dated 7/10/2020).  Although the request and decision both occurred after the filing of this lawsuit, the July 10 letter, per its own terms, constitutes a decision on the appeal from the November 21, 2019 agency

action producing the two "fraudulent" documents.  The VA's July 10 decision is a "no records" response.  *Id.*  Plaintiff confirms in his response "the VA has now provided me with the No Records Response on July 10, 2020 as it pertains to the November 21, 2019 Fraudulent FOIA Response."  Dkt. 14 at 7.[18]  Absent any agency action left to compel, this Court no longer has jurisdiction over the VA appeal.

Count IV alleges on April 13, 2020, Plaintiff appealed to the Department of Justice the decision of the Director of the EOUSA.  Dkt. 1 at ¶ 34; Dkt. 1-2 at 1–2 (DOJ letter dated 4/13/2020).  The complaint alleges that as of May 18, some twenty-six working days later, Plaintiff had not received any decision on the appeal.[19]  Plaintiff's response reveals that on June 2, 2020, the day after this FOIA action was filed, he received a decision on the DOJ appeal.  Dkt. 14 at 10–11 (DOJ letter dated 6/2/2020).  This Court does not have authority, nor did it ever in this FOIA action, to "inform the judge presiding over USDC Case No. 8:18-cv-2000-36JSS of the fraud by AUSA."  *See* Dkt. 14 at 6.  Counts III and IV are moot.

Accordingly, the motion to dismiss (Dkt. 8) is granted without prejudice. Should Plaintiff not replead and file an amended complaint within fourteen (14) days, this case will be closed.

---

[18] "We found that you have appealed VA's original response to you dated November 21, 2019, and a pending active litigation."  Dkt. 14 at 13 (VA letter dated 7/10/2020).
[19] The Court takes notice of the 2020 pandemic and the disruption caused in business operations.

**DONE AND ORDERED** at Tampa, Florida, on July 31, 2020.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**Copies furnished to**:
Counsel of Record and unrepresented parties